IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Christopher R. Murray,** | § § § | |
| Chapter 7 Trustee, | § § | |
| v. | § § | Civil Action No. 4:22-cv-1630 |
| **Nielsen IP Law LLC,** | § § § | |
| Defendant. | § | |

## TRUSTEE'S COMPLAINT

Christopher R. Murray, the Chapter 7 Trustee for Q'Max America Inc. ("QAI"), and Anchor Drilling Fluids USA, LLC ("Anchor"), and for the Bankruptcy Estate of Q'Max America Inc., and Anchor Drilling Fluids USA, LLC, files this Original Complaint against Defendant Nielsen IP Law LLC ("Nielsen").[1]

### SUMMARY OF COMPLAINT

1. This action seeks to avoid and recover fraudulent and preferential transfers made by Debtor QAI to Defendant Nielsen between May 24, 2018, and May 24, 2020 (two (2) years prior to the filing of the above-styled bankruptcy case). Debtor QAI made transfers of at least $349,278.64 during that time to, and for the benefit of, Defendant Nielsen by way of money transfers at times when Debtor QAI was insolvent. The transfers were paid pursuant to invoices issued to, and for services provided for, non-party, and 100% owner of Debtor QAI, Q'Max Solutions, Inc. ("QSI").

---

[1] Citations to the Q'Max America, Inc. and Anchor Drilling Fluids USA, LLC's bankruptcy case, Case No. 20-60030 ("Bankruptcy Case") will be "Bankr. ECF No. 1."

2. The Trustee may avoid and recover these payments as fraudulent transfers pursuant to 11 U.S.C. §§ 547, 548, and 550 and Chapter 24 of the Texas Business and Commerce Code.

3. Debtor QAI had no legal obligation to make these transfers and received no benefit from making any of these transfers.

## JURISDICTION, VENUE & AND CONSTITUTIONAL AUTHORITY

4. The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1334.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1409.

6. The Trustee consents to entry of a final judgment by this Court in this matter.

## PARTIES

7. Plaintiff is the duly appointed chapter 7 trustee for the Bankruptcy Estate of Debtor QAI. Plaintiff may be served with pleadings and process in this case through its undersigned counsel.

8. Defendant Nielsen Corporation is a limited liability company organized under the laws of Texas and may be served through its registered agent 609 Main Street, Suite 1925, Houston, Texas 77002, or wherever it may be found.

## STATEMENT OF FACTS

9. Debtor QAI was an independent oilfield services company focused on providing drilling fluids and solids control services to national and independent oil companies. Debtor QAI was based in Houston, Texas.

10. Debtor QAI failed to make payments on debt as it became due in early 2018. Indeed, QAI was making late payments to vendors from February 2018 onward. These late payments became progressively later over time.

11. On May 24, 2020 ("Petition Date"), Debtor QAI filed a voluntary Chapter 7 petition for bankruptcy under title 11 of the Bankruptcy Code, commencing bankruptcy case number 2-60030 in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division. On the same day, Debtor Anchor filed a voluntary Chapter 7 petition commencing bankruptcy case number 20-60031 in the same court. Plaintiff was appointed as the chapter 7 trustee for both.

12. On May 27, 2020, the bankruptcies were ordered combined for joint administration.

13. Debtor QAI is wholly owned by QSI.

14. Defendant Nielsen was engaged by QSI to provide legal services to QSI.

NIELSEN IP LAW LLC
609 MAIN STREET
SUITE 1925
HOUSTON, TX 77002
TAX ID:80-0471093

V153 - PROFEELEGAL LEGAL $14,109.56

Q'Max Solutions Inc.
11700 Katy Freeway
Suite 200
Houston, TX 77079

June 11, 2019
Invoice No. 2248

**Remittance Advice**

RECEIVED
JUN 14 2019
BY:

| | |
|---|---|
| FTO: Barite in Drilling Fluids | $6,425.00 |
| OPPOSITION OF TM: QMAS CONSULTING | $1,444.00 |
| MARK: CBMAX REGISTRATION IN CANADA CA Registration No. TMA 668,514 | $962.48 |
| Mark: POLYTAR SYSTEM REGISTRATION IN CANADA CA Registration No. TMA 619,977 | $962.48 |

15. However, while Debtor QAI was struggling financially, QSI used Debtor QAI's accounts to pay for the legal services rendered by Defendant Nielsen. In other words, QSI used Debtor QAI's accounts to pay for legal services that were of no, or almost no, benefit to Debtor QAI.

16. The payments for legal services were significant. In total, Debtor QAI paid Defendant Nielsen at least $349,278.64 for the drilling compound benefiting and on behalf of QSI.

| Payment Date | Payment To | Payment Amount |
| --- | --- | --- |
| 6/7/2018 | Nielsen | $15,785.62 |
| 7/19/2018 | Nielsen | $42,050.09 |
| 8/9/2018 | Nielsen | $19,559.68 |
| 9/6/2018 | Nielsen | $21,229.69 |
| 9/13/2018 | Nielsen | $10,615.68 |
| 10/18/2018 | Nielsen | $9,575.63 |
| 11/15/2018 | Nielsen | $7,695.35 |
| 12/28/2018 | Nielsen | $56,429.44 |
| 1/17/2019 | Nielsen | $15,047.29 |
| 3/14/2019 | Nielsen | $15,588.53 |
| 5/3/2019 | Nielsen | $13,888.31 |
| 5/9/2019 | Nielsen | $17,519.11 |
| 6/20/2019 | Nielsen | $18,114.00 |
| 7/26/2019 | Nielsen | $8,792.00 |
| 8/9/2019 | Nielsen | $14,212.50 |
| 9/19/2019 | Nielsen | $14,109.56 |
| 10/17/2019 | Nielsen | $6,650.00 |
| 12/6/2019 | Nielsen | $24,836.01 |
| 1/3/2020 | Nielsen | $17,580.15 |
| | **Total:** | **$349,278.64** |

17. Because Defendant Nielsen was engaged by, and provided legal services to, QSI, all payments made by Debtor QAI to Defendant Nielsen were improper, as Debtor QAI did not benefit from any such services provided by Defendant Nielsen.

18. Despite knowing it did not benefit from the services provided by Defendant Nielsen to QSI, and knowing it was not obligated to proffer any payments to Defendant Nielsen because (1) no invoices were submitted to it, and (2) no contract between Defendant Nielsen and Debtor QAI existed, Debtor QAI nonetheless transferred at least $349,278.64 in payments to Defendant Nielsen, which it knew would prevent this money from going to its true creditors.

## CAUSES OF ACTION

### COUNT 1
### FRAUDULENT TRANSFERS UNDER 11 U.S.C. §§ 548 AND 550

19. Plaintiff realleges and incorporates all allegations of fact contained in the preceding paragraphs as if fully set forth herein.

20. The Avoidable Transfers made before the Petition Date are avoidable as fraudulent transfers under 11 U.S.C. § 548(a)(1)(A) because Debtor QAI made these transfers with actual intent to hinder, delay, or defraud its creditors. Indeed, numerous badges of fraud exist.

21. First, Debtor QAI did not receive adequate consideration for the transfers. Debtor QAI did not engage Defendant Nielsen. Debtor QAI did not receive any legal services from Defendant Nielsen. And Debtor QAI did not receive any other tangible benefit from the legal services provided by Defendant Nielsen. Yet Debtor QAI paid the bill.

22. In addition, Debtor QAI's financial condition was deteriorating before the transfers begun. As outlined above in paragraph 10, Debtor QAI was unable to make payments on debt as it became due as early as February 2018.

23. The transfers were also constructively fraudulent because Debtor QAI received less than equivalent value. Defendant Nielsen provided legal services to QSI and Debtor QAI paid the bill. As a result, Debtor QAI could not have received equivalent value for the transfer. Only QSI could have.

24. The Avoidable Transfers made before the Petition Date are avoidable as fraudulent transfers under 11 U.S.C. § 548(a)(1)(B) because:

    A. Debtor QAI made these transfers and received less than a reasonably equivalent value in exchange for such transfer or obligations, and in fact, received no value;

    B. Debtor QAI was insolvent on the date each such transfer was made, or such obligation was incurred, or became insolvent as a result of such transfer or obligation; and

    C. Debtor QAI was not personally liable for the debts satisfied by the Avoidable Transfers.

25. Under 11 U.S.C. § 550(a), the Trustee may recover the value of the Avoidable Transfers from "the initial transferee of such transfer of the entity for whose benefit such transfer was made." Defendant Nielsen was the initial transferee of the Avoidable Transfers. In the alternative, Defendant Nielsen as the entity for whose benefit such transfers were made. Therefore, the Trustee is entitled to avoid and recover the value of the Avoidable Transfers from Defendant Nielsen.

**COUNT 2**
**TEXAS UNIFORM FRAUDULENT TRANSFERS ACT**

26. Plaintiff realleges and incorporates all allegations of fact contained in the preceding paragraphs as if fully set forth herein.

27. The Avoidable Transfers are avoidable as fraudulent transfers under TEX. BUS. & COM. CODE ANN. § 24.001, *et. seq.* ("Texas Uniform Fraudulent Transfer Act" or "TUFTA"), which the Trustee incorporates pursuant to 11 U.S.C. § 544(b)(1).

28. One or more creditors exist whose claims arose before some of the Avoidable Transfers for whom the Trustee can act.

29. Debtor QAI made the Avoidable Transfers for the benefit of QSI and/or Defendant Nielsen with the actual intent to hinder, delay, or defraud one or more of its true creditors. These transfers exhibit badges of fraud. The Trustee incorporates by reference the facts set forth in paragraphs 13-18, *supra*, setting forth the facts supporting a finding that Debtor QAI had actual intent to hinder, delay, or defraud. Accordingly, the Avoidable Transfers are fraudulent under TEX. BUS. & COM. CODE ANN. § 24.005(a)(1), and the Trustee may avoid and recover the Avoidable Transfers from Defendant Nielsen.

30. Debtor QAI made the Avoidable Transfers to Defendant Nielsen without receiving reasonably equivalent value in exchange for the Transfers. Additionally, when Debtor QAI made the Avoidable Transfers for the benefit of Defendant Nielsen, it (1) was engaged or was about to engage in a business or transaction for which the remaining assets of Debtor QAI were unreasonably small in relation to the business or transaction, or (2) intended to incur, or believed or reasonably should have believed that Debtor QAI would incur, debts beyond its ability to pay as they became due. Accordingly, the Avoidable Transfers are fraudulent under TEX. BUS. & COM. CODE ANN. § 24.005(a)(2), and the Trustee may avoid and recover the Avoidable Transfers from Defendant Nielsen.

31. Debtor QAI made the Avoidable Transfers to the transferees for the benefit of Defendant Nielsen and QSI (1) without receiving reasonably equivalent value in exchange for the Avoidable Transfers, and (2) Debtor QAI either was insolvent when it made the Avoidable Transfers, or it became insolvent, partially as a result of the Avoidable Transfers. At the time of the Avoidable Transfers, (1) Debtor QAI's debts exceeded the fair valuation of all its assets, and (2) Debtor QAI was generally not paying its debts as they became due. Accordingly, the Avoidable

Transfers are fraudulent under TEX. BUS. & COM. CODE ANN. § 24.006(a), and the Trustee may avoid and recover the Avoidable Transfers.

32. Because the Avoidable Transfers were fraudulent under TEX. BUS. & COM. CODE ANN. §§ 24.005(a)(1) and (2) and 24.006(a), the Trustee may avoid the Avoidable Transfers to Defendant Nielsen under TEX. BUS. & COM. CODE ANN. § 24.008. Pursuant to 11 U.S.C. § 550(a) and TEX. BUS. & COM. CODE ANN. § 24.008, the Trustee may recover from Defendant Nielsen the value of the Avoidable Transfers.

### CONSTRUCTIVE TRUST

33. Once an entity becomes insolvent and can no longer continue normal business operations, its assets become a trust fund for the benefit of all creditors. *Tigrett v. Pointer*, 580 S.W.2d 375, 383 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.). Any assets that are transferred to or for the benefit of an officer, director, or owner are held in a constructive trust. *Southwest Livestock & Trading Co. v. Dooley*, 884 S.W.2d 443,444 (Tex. App.—San Antonio 1994, writ denied); *Donovan v. Rankin*, 768 S.W.2d 443, 444 (Tex. App.—Houston [1st Dist.] 1989, writ denied). The Trustee requests that a constructive trust be imposed against all Avoidable Transfers made to Defendant Nielsen.

### TURNOVER OF PAYMENTS UNDER 11 U.S.C. § 542

34. All of the Avoidable Transfers made to Defendant Nielsen are property of the Bankruptcy Estate. The Avoidable Transfers are in a known amount. The Trustee seeks a judgment requiring the turnover of all Avoidable Transfers and all proceeds derived therefrom pursuant to 11 U.S.C. § 542.

### ATTORNEYS' FEES

35. The Trustee requests an award of his reasonable attorneys' fees and costs pursuant

to TEX. BUS. & COM. CODE ANN. § 24.013 and all other applicable law.

## PRE- AND POST-JUDGMENT INTEREST

36. The Trustee seeks pre- and post-judgment interest on his recovery at the maximum amount allowable by law.

## PRAYER

37. Accordingly, the Trustee requests the entry of a judgment against Defendant Nielsen Corporation consistent with the above-stated causes of action, including all actual damages, turnover, the imposition of a constructive trust, attorneys' fees and costs, pre- and post-judgment interest, and all such other and further relief to which the Trustee may be justly entitled.

Dated: May 20, 2022    Respectfully submitted

    MCDOWELL HETHERINGTON LLP

    By: /s/ *Nicholas R. Lawson*
    Nicholas R. Lawson
    Texas Bar No. 24083367
    Avi Moshenberg
    Texas Bar No. 24083532
    Matthew Caldwell
    Texas Bar No. 24107722
    McDowell Hetherington LLP
    1001 Fannin Street, Suite 2700
    Houston, TX 77002
    P: 713-337-5580
    F: 713-337-8850
    E: Nick.Lawson@mhllp.com
       Avi.Moshenberg@mhllp.com
       Matthew.Caldwell@mhllp.com

    ***COUNSEL FOR CHRISTOPHER R. MURRAY, CHAPTER 7 TRUSTEE***